UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 09-cv-02112-REB

CHRISTIE N. KING,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

# ORDER REVERSING DISABILITY
# DECISION AND REMANDING TO COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3], filed September 3, 2009, seeking review of the Commissioner's decision partially denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of depression, post-traumatic stress disorder, and knee and back pain. After her application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on December 6, 2007. At the time of the hearing, plaintiff was 30 years old. She has a high school equivalency diploma and past relevant work

experience as a certified nurses aide, cashier, file clerk, and painter. She has not engaged in substantial gainful activity since November 25, 2005, the date of her application.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform light to sedentary work with certain postural and mental limitations. Although this finding precluded plaintiff's past relevant work, the ALJ determined that there were other jobs existing in significant numbers in the national and local economies that plaintiff could perform. He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of

a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294

n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff maintains primarily that the ALJ committed reversible error in failing to properly assess the psychiatric opinion of Andreas Brueggler, a physicians assistant

from whom she received regular psychiatric treatment for depression and bipolar disorder. The ALJ generally accepted Brueggler's assessment of plaintiff's mental residual functional capacity, but declined to adopt his conclusion that plaintiff suffered from "marked" limitations in her ability to respond appropriately to usual work situations and changes in a routine work setting. (*See* Tr. 268.) The ALJ gave five reasons for his determination in this regard: (1) that Brueggler was not an "acceptable medical source" pursuant to the Commissioner's regulations; (2) that Brueggler's conclusion in this regard was not supported by his treatment notes, specifically that Brueggler had found plaintiff to have Global Assessment of Functioning ("GAF") scores between 50 and 60, indicating only "moderate" limitations; and (3) that Brueggler failed to mention or account for plaintiff's marijuana use, which the ALJ found "could certainly be expected to affect her ability to respond appropriately to work changes." (Tr. 23-24.) None of these reasons, however, ultimately bears up to scrutiny. I therefore remand.

It is true that Brueggler was not an "acceptable medical source" within the meaning of the Commissioner's regulations. He therefore could not be considered a "treating source," whose opinion might be entitled to controlling (i.e. determinative) weight if otherwise well supported by the record. *See Weaver v. Astrue*, 2009 WL 3838280 at *3 (10th Cir. Nov 18, 2009); *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007). Nevertheless, the Commissioner has recently recognized that given the realities of modern-day managed healthcare,

> medical sources who are not "acceptable medical sources,"
> such as nurse practitioners, physician assistants, and
> licensed clinical social workers, have increasingly assumed a
> greater percentage of the treatment and evaluation functions

5

> previously handled primarily by physicians and
> psychologists. Opinions from these medical sources, who
> are not technically deemed "acceptable medical sources"
> under our rules, are important and should be evaluated on
> key issues such as impairment severity and functional
> effects, along with the other relevant evidence in the file.

**Social Security Ruling** 06-03p, 2006 WL 2329939 at *3 (SSA Aug. 9, 2006) [hereinafter "**SSR** 06-03p"]. Opinions of such medical sources still must be considered applying the same factors as are generally used to assess treating source opinions. ***Id.*** at *4; ***see also Frantz***, 509 F.3d at 1302.[1]

Of these relevant factors, the ALJ considered only the purported consistency of Brueggler's opinion with the medical evidence of record. The ALJ's conclusion that Brueggler's opinion was inconsistent with his own treatment notes is largely unexplained and unsubstantiated. Such a conclusion in the guise of a finding cannot stand. ***See Hardman v. Barnhart***, 362 F.3d 676, 679 (10th Cir. 2004). To the extent the ALJ's intended to rely in this regard on citations in Brueggler's treatment notes to GAFs of between 50 and 60,[2] his classification of these findings as showing only "moderate

---

[1] These factors include:

    1.    the physician's length of treatment of the claimant;
    2.    the physician's frequency of examination;
    3.    the nature and extent of the treatment relationship;
    4.    the support of the physician's opinion afforded by the medical evidence of record;
    5.    the consistency of the opinion with the record as a whole; and
    6.    the specialization of the treating physician.

20 C.F.R. § 416.927(d)(2)-(6). ***See also* SSR** 06-03p, 2006 WL 2329939 at *4-5.

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" ***Langley v. Barnhart***, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, ***Diagnostic and Statistical Manual of Mental Disorders*** at 32 (Text Revision 4th ed. 2000) ("DSM-IV")).

functional deficits" is not supportable.  While a GAF of 51-60 does indicate moderate symptoms, a GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004) (quoting DSM-IV at 34). Moreover, other evidence in the record shows GAF scores of as low as 35 during the same time period.  (Tr. 188.)  *See Lopez v. Barnhart*, 78 Fed. Appx. 675, 678 (10th Cir. Oct. 16, 2003) ("A GAF of 31-40 indicates '[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work . . ., family relations, [or] judgment[.]") (quoting DSM-IV at 34).  Although a low GAF score does not necessarily indicate an inability to work, *see id.*, because the ALJ relied on it for that purpose, a more honest and accurate assessment of that evidence was required.

The ALJ's failure otherwise to substantiate his conclusion that Brueggler's opinion was not supported by the record infects his reliance on the opinion of Dr. Timothy Cucich for his contrary conclusion.  (*See* Tr. 168-173.)  Cucich, although a medical doctor, was not a treating source, but a consultative examiner who saw plaintiff only once.  His opinion is not clearly entitled to greater weight than Brueggler's, who, although not a medical doctor, saw plaintiff regularly over the course of at least 18 months.  (*See* Tr. 263-266 (report dated November 26, 2007, noting that plaintiff had been seen at Brueggler's clinic every two to three months since May, 2006).)  **SSR** 06-03p, 2006 WL 2329939 at *6 (affirming that "an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical

7

source,'" when, for example, "he or she has seen the individual more often than the treating source"). Thus, although conflicts in the evidence are generally for the ALJ to resolve, **Reyes v. Bowen**, 845 F.2d 242, 245 (10th Cir. 1988), it is not possible in this instance for me to determine that the ALJ's choice between these two opinions was justified. **See Frantz**, 509 F.3d at 1302 (noting that ALJ is required to "'ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case'") (quoting **SSR** 06-03p, 2006 WL 2329939 at *6 ).

The final reason cited by the ALJ in support of his rejection of Brueggler's opinion – that it failed to account for plaintiff's marijuana use – fares no better. First, it fails to acknowledge that Dr. Cucich himself apparently accepted at face value plaintiff's representation that she had not used drugs in the past four years and thus does not appear to have considered the purported impact of drug use either. (Tr. 170.) Moreover, the ALJ's lay conclusion that drug use might be expected to affect plaintiff's ability to respond appropriately in the workplace, not otherwise tied to the medical record, is not substantial evidence. **See Winning v. Commissioner of Social Security**, 661 F.Supp.2d 807, 823 (N.D. Ohio 2009); **Belden v. Heckler**, 586 F.Supp. 628, 634-35 (N.D. Ind. 1984). In addition, although drug use may be relevant to an assessment of a *plaintiff's* credibility *vel non*, it is not a valid basis for discrediting an otherwise valid medical opinion. **See Langley**, 373 F.3d at 1121; **McGoffin v. Barnhart**, 288 F.3d 1248, 1252 (10th Cir. 2002). Finally, to the extent the ALJ believed

8

that drug use might have been a factor in plaintiff's disability determination, he was required to determine whether drug use was a severe impairment at step two of the sequential evaluation and, if so, whether drug use was a contributing factor material to the finding of disability, as required by the Contract With America Advancement Act of 1996, Pub. L. 104-121, 110 Stat. 847, §§ 105(a)(1)(C) & 105(b)(1)(I) (codified at 42 U.S.C. §§ 423(d)(2)(C) & 1382c(a)(3)(I)). *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001). Having failed to do so, however, the ALJ must have concluded that plaintiff's drug use was not severe. It was therefore inappropriate to attempt to reintroduce such considerations at step four via the ALJ's own unsubstantiated opinions.

For these reasons, the ALJ's determination to discredit Brueggler's opinion regarding the marked impact of plaintiff's mental impairments on her ability to respond appropriately to usual work situations and changes in the work setting is not supported by substantial evidence. Nor is this lapse harmless. *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995); *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988). The vocational expert testified at the hearing that an individual who suffered from such a marked limitation would probably be precluded from competitive employment. (*See* Tr. 309.) Therefore, I find and conclude that this case must be remanded.

In ordering remand, however, I note that plaintiff's remaining arguments on appeal have no merit. The ALJ's determination as to plaintiff's physical residual functional capacity finds ample support in the record, including in plaintiff's own testimony, which, although not adopted in its entirety, was "generally" accepted by the

9

ALJ. (Tr. 22.) Because the ALJ made this concession while simultaneously recognizing and describing how the evidence of record suggested a much higher physical residual capacity, I find no reversible error in this regard.

Nor is there reversible error in the ALJ's step-five determination that the jobs identified at the hearing existed in sufficiently significant numbers to be valid alternatives. The Tenth Circuit has declined to adopt a bright-line rule as to what constitutes a significant number of jobs. *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (citation, internal quotation marks, and footnote omitted; second alteration in *Trimiar*). Here, the vocational expert identified two different jobs as within the residual functional capacity found by the ALJ: electronics worker (51,000 jobs nationally and 750 in Colorado), and production assembler (135,000 jobs nationally and 1,000 in Colorado). (Tr. 25, 303.)[3] Since the number of such jobs nationally is clearly significant, remand is not required. *See Botello v. Astrue*, 2010 WL 1645976 at * 4 (10th Cir. Apr. 26, 2010); *Raymond v. Astrue*, 356 Fed. Appx. 173, 178 (10th Cir. Dec. 15, 2009). *See also Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. Apr. 18, 2008) (aggregating total numbers across two jobs identified by vocational expert).

Although plaintiff requests a directed award of benefits, I do not find that this case presents an appropriate occasion for the exercise of my discretion in that regard. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993).[4]

---

[3] The vocational expert identified a number of other potential jobs within plaintiff's residual functional capacity as stated by the ALJ in various hypotheticals (*see* Tr. 301-306), but the ALJ did not cite to or rely on these alternative jobs in his findings (Tr. 25.)

[4] I do not intimate by this ruling that plaintiff is or should be found disabled.

10

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That this case is **REMANDED** to the ALJ, who is directed to

   a. Reevaluate plaintiff's mental residual functional capacity at step four of the sequential evaluation process, articulating fully his findings in this regard and properly weighing the various medical opinions of record;

   b. Recontact any treating, consultative, or reviewing source for further clarification of his or her findings, seek the testimony of medical experts, order subsequent consultative examinations, or otherwise further develop the record as he deems necessary;

   c. If necessary, redetermine at step five of the sequential evaluation process whether there are other jobs existing in significant numbers in the local and national economies that plaintiff can perform within her mental and physical residual functional capacity;

   d. Reassess the disability determination; and

3. That plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1 and 28 U.S.C. § 2412(a)(1).

Dated September 13, 2010, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge